COUNTY DEPARTMENT OF PUBLIC WELFARE, WHITE COUNTY
*v.* TRUSTEES OF INDIANA UNIVERSITY ET AL.

[No. 568A89. Filed October 14, 1969. No petitions for
rehearing or transfer filed.]

*Charles S. Siferd,* of Monticello, and *Carl J. Sandy,* of
Lafayette, for appellant.

*Lewis D. Dellinger,* of Monticello, attorney for appellee,

Princeton Township, *Charles S. Siferd,* of Monticello, attorney for appellee, West Point Township, *William S. Hall,* of Indianapolis, and *Karl Overbeck,* of Monticello, attorneys for appellee, Trustees of Indiana University.

LOWDERMILK, P.J.—William Neil Smith, age 29, came, with his family, to Princeton Township, White County, Indiana, on June 16, 1963, from Newport News, Virginia, where he had lived for several years and where he had been employed. He stayed in Princeton Township until June 26, 1963, when he moved with his family to West Point Township, White County, where he remained thereafter during two hospitalizations, which he required. Mr. Smith, on a date following July 1, 1963, and prior to September 16, 1963, became ill in West Point Township and in immediate need of medical and hospital care which was not available in West Point Township nor in White County, and thereupon he was taken to the Long Hospital in Indianapolis, which hospital is under the management and direction of the Trustees of Indiana University.

He was a poor person, within the meaning of the poor relief laws of Indiana and had no financial resources with which to pay for his medical and hospital care.

He was hospitalized in said hospital on two occasions, namely, from September 16, 1963, to October 1, 1963, at a cost of $2,115.15, and from January 4, 1964, to January 18, 1964, at a cost of $1,027.45, a total of $3,141.60. Mr. Smith was suffering from cancer, probably of the spine.

On the occasion of the patient's first hospitalization the hospital notified the appellee, West Point Township, which notification was received on September 17, 1963, and thereupon West Point Township notified The County Department of Public Welfare of White County of the patient's hospitalization and need for care.

Mr. Smith had had severe pain in his left hip in the month of March, 1963, at which time he was still working in New-

port News, Virginia. This was diagnosed by his doctor as "irritated nerves" in his left leg and he had been treated and the trouble had disappeared. He had continuous employment until coming to Indiana in June, 1963.

Appellee, Trustees of Indiana University, brought its action in the White Circuit Court against The County Department of Public Welfare of White County and the appellees, West Point Township, White County, Indiana, and Princeton Township, White County, Indiana. Issues were formed and the parties stipulated the facts hereinabove set forth in this opinion. On January 17, 1964, the deposition of Mr. Smith was taken while he was in the hospital. The County Department of Public Welfare of White County and West Point Township received notice of the deposition on or about January 10, 1964, and were represented at the taking of the deposition.

Trial was had by the court on the stipulated facts, the deposition of Mr. Smith, affidavits and exhibits, which affidavits and exhibits were stipulated into evidence and became a part thereof. The defendant, Princeton Township, White County, Indiana, filed a motion for judgment in its behalf, which motion was taken under advisement and after due consideration was sustained. (The record is silent at which stage of the proceedings it was filed.)

Judgment was rendered for the Trustees of Indiana University against The County Department of Public Welfare of White County, Indiana, in the amount of $3,141.60, together with costs.

Thereafter, the appellant filed its motion for new trial for the reason that the decision of the court is not sustained by sufficient evidence and is contrary to law, together with its memorandum affixed thereto. The motion for new trial was overruled and an appeal prayed. Appellant, in its assignment of errors, charged the court erred in overruling appellant's

motion for a new trial. The assigned error meets the statutory requirements and all alleged errors may be presented thereunder. *Frazer* v. *McMillin & Carson* (1932), 94 Ind. App. 431, 179 N. E. 564; *Kunkel, Trustee, etc.* v. *Arnold* (1960), 131 Ind. App. 219, 158 N. E. 2d 660.

The findings of facts and judgment rendered thereon are as follows:

"The Court having examined the briefs, stipulations, depositions, exhibits and affidavits filed in this cause and having examined the statutes and decided cases of Indiana now finds:

"1. William Neil Smith was a non-resident of the State of Indiana on June 26, 1963 and was residing in a leased house in West Point Township, White County, Indiana.

"2. That in June 1963 William Neil Smith resided in the State of Virginia and was suffering no apparent illness being physically able to work and did work as an employee of A. K. Miller. That upon changing his place of residence to White County, Indiana, in June 1963 he was physically able to work and did work as a farm hand in White County, Indiana.

"3. That in the month of July 1963 William Neil Smith was hospitalized in the Home Hospital, Lafayette, Indiana, and after release from said Home Hospital was sent to Mayo's Clinic where he underwent surgery for removal of a tumor from his spine.

"4. That on September 16, 1963 William Neil Smith was admitted as an emergency patient to the Long Hospital at the Indiana University Medical Center, Indianapolis, Indiana. William Neil Smith was on September 16, 1963 and all times subsequent thereto a non-resident of the State of Indiana and an indigent person, unemployed and without financial resources to pay for necessary medical and hospital care.

"5. That on or about September 17, 1963 the Trustee of West Point Township, White County, Indiana received official notice of the admittance of William Neil Smith for emergency treatment at the Indiana Medical Center and such treatment continued until October 31, 1963 when he was discharged under medication with orders to return to the Hematology and Radiology Clinic in two months.

"6. That William Neil Smith was under continuous treatment and was again hospitalized at the Indiana University Medical Center on January 4, 1964 and received treatment until January 18, 1964.

"7. That the Trustee of West Point Township, White County, Indiana, and the White County Department of Public Welfare have failed and refused to pay for the treatment and hospitalization of William Neil Smith.

"Upon these facts the Court finds that this case falls under the provisions of Section 52-148a Burns Indiana Statutes being the Poor Relief Act and not under the Welfare Act and should be liberally construed to give purport to the intention of the legislature. 191 N. E. 2d 116

"William Neil Smith was physically able to and was employed for six years immediately prior to his removal from Virginia to White County, Indiana, and had no serious illness during those six years. After his arrival in Indiana he was physically able to work and did work as a farm hand. In July, 1963, he was hospitalized by what was finally determined to be a malignancy, lymphosarcoma or cancer.

"In reviewing Indiana cases and giving liberal construction to the statutes the Court does not believe that the legislature intended to relieve a Township or County of the duty to care for and provide medical and hospitalization service for an indigent person merely on the presumption that such indigent person might have had an undisclosed physical condition amounting to illness prior to the time he did become ill and unable to perform customary duties, while residing in such Township and County. William Neil Smith might have had a physical condition for many years that finally caused his illness in July 1963 while residing in West Point Township, White County, Indiana. To hold that he did not become ill in West Point Township, White County, Indiana would be to subvert the intention of the legislature to care for indigents in their sickness, legal residents and non-residents alike. Section 52-148a Burns Indiana Statutes provides: 'In the event any indigent person is injured or in the event any indigent person who is a non-resident of this state becomes ill in any township of this state, the overseer of the poor in such township shall immediately report such matter to the department of public welfare of the county in which such township is located, which department shall promptly provide medical and hospital care for such indigent person. The cost of any such medical and hospital care so furnished shall be borne by the county of the legal residence of the indigent, or if he

has no legal residence in any county of this state by the county in which such township is located; and shall be paid out of any money appropriated to the county welfare department. For the purpose of this act (Sec. 52-144—52-181) the term indigent person shall mean a person without financial resources to pay for such medical and hospital care.'

"The intent and purpose of this statute is very clear in that it requires prompt medical and hospital care for an indigent, non-resident who becomes ill and the county in which such indigent, non-resident person resides shall pay the cost of such medical and hospital care furnished.

"The statutory duty placed upon the Township and County to furnish medical and hospital care for the indigent is not affected by the failure of the hospitalized or someone on his behalf to furnish prompt notice of the hospitalization.

"The law does not contemplate that the doors of a hospital be closed to indigent ill persons or the services of a physician be withheld until a formal notification be made to a township trustee to determine responsibility and an order be given for aid necessary to save a human life. The primary act required is to give aid and care to the indigent and when such care has been rendered, then determine who is responsible for the payment of such care.

"To hold otherwise would be contrary to statutes and decided cases pertaining thereto. If a hospital refused to accept an emergency patient until the responsibility and obligation for his admittance and hospitalization was determined, a human life might be at stake.

"Therefore the Court finds that upon the acceptance of William Neil Smith by the Indiana University Medical Center as an emergency patient the duty to assume the responsibility for his care and hospitalization fell upon the Trustee of West Point Township and the Court further finds that the defendant, The Trustee of West Point Township, having received notice and having notified the County Department of Public Welfare of White County, was relieved of the responsibility and such responsibility then became the duty of the County Department of Public Welfare.

"Therefore the Court further finds that the plaintiff, The Trustees of Indiana University, shall recover of and from the defendant, The County Department of Public Welfare of White County, the sum of Three Thousand One Hundred Forty-One Dollars and Sixty-Cents ($3141.60) and the costs of this action.

"Therefore it is ordered, adjudged and decreed that the plaintiff, The Trustees of Indiana University, recover of and from the defendant, The County Department of Public Welfare of White County, Indiana, the sum of Three Thousand One Hundred Forty-One Dollars and Sixty Cents ($3141.60) together with the costs of this action."

The parties stipulated to certain facts and are bound thereby.

"A stipulation admitting or agreeing on the existence of facts is binding and conclusive on the parties and on the court . . ."

I.L.E., Vol. 26, *Stipulations,* § 4, p. 390.

". . . A stipulation of facts is an express waiver made in court or preparatory to trial, by the party or his attorney, conceding for the purposes of the trial the truthfulness of some alleged fact. It has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted, so that the one party need offer no evidence to prove it and the other is not allowed to disprove it. It is a judicial admission of the fact or facts stipulated. *Deffler* v. *Loudenbeck* (1924), 233 Ill. App. 240, 245. Serving as they do to simplify and expedite litigation, such stipulations "are looked upon with favor by the courts. When, upon a hearing in a compensation case, a stipulation of facts is entered into within the authority of counsel, it is, unless and until it is set aside or withdrawn, binding and conclusive between the parties and upon the Industrial Board. (Citing cases.)"

*Schreiber* v. *Rickert* (1943), 114 Ind. App. 55, 50 N. E. 2d 879.

Although certain facts were stipulated and were taken by the court as true, this appeal presents a number of legal questions to be passed upon by this court for the determination of Mr. Smith's eligibility to qualify for benefits he received.

1. Was Mr. Smith a non-resident of Indiana at the time of receiving hospitalization and care?

2. Was Mr. Smith an indigent person at the time he received hospitalization and care?

3. Did Mr. Smith "become ill" before coming to the State of Indiana in June, 1963, within the meaning of that term as used in Burns' Ind. Stat. § 52-148a?

4. Was proper notice given to the Trustee of West Point Township, White County, Indiana, and to the appellant, The County Department of Public Welfare of White County?

The trial court has very ably answered these questions in his findings and judgment, which is now a part of this opinion. We shall, however, attempt to elaborate thereon.

Appellant contends that Burns' Ind. Stat. § 52-148a was repealed by the Acts of 1965, as set out at §§ 52-1146—52-1150 in the 1968 Cumulative Pocket Supplement to Burns' Ind. Stat. Anno., Vol. 10, pt. 1.

The action sued on accrued for hospital services and treatment rendered to William Neil Smith in the years of 1963 and 1964 and the record discloses the complaint was filed the 4th day of February, 1965, in the White Circuit Court.

It is elementary that an action which accrues and upon which suit has been filed under a statute in full force and effect at the time of the accrual of the cause of action and the filing of the suit shall continue to be pursued under the statute in force and effect at that time. The subsequent repeal of that statute by the Legislature cannot deprive the injured party of his cause of action.

Section 52-1146 reads in part as follows:

"*On and after the effective date of this act*, . . . in the event any indigent person is injured or in the event any indigent person who is a nonresident of this state becomes ill in any county of this state, * * *" (Our emphasis.)

Certainly, appellant's contention is untenable for the very act which it says repealed the statute under which this cause of action was commenced and tried, made any liability under the Act effective on and after its effective date. Said Act relied upon by appellant became effective July 8, 1965.

We are of the opinion that Burns' Ind. Stat. § 52-148a controls. This statute was set out in the findings and in the interest of brevity will not again be set out in this opinion.

Burns' Rev. Stat. § 52-147. Legal settlements in township Acquisition, reads, in part, as follows:

> "* * * In all other counties legal settlement may be acquired in any township or county so as to oblige such township or county to relieve and support the person acquiring such settlement, in case he is poor and in need of relief, as follows: * * * d. Every male person and every unmarried woman over the age of twenty-one [21] who shall have resided three [3] consecutive years in the state, one [1] whole year of which shall have been in any one [1] township without interruption, shall thereby gain a settlement in such township, but if during the first twelve [12] months of such residence in the township, he or she shall have been supported, in whole or in part, as an indigent person by any governmental agency maintaining proper records of such time so supported, the time during the first twelve [12] months during which he or she was so supported by such governmental agency shall be eliminated from the calculation for determining the residence of one [1] whole year in any one [1] township for the purpose of poor relief."

Mr. Smith having moved to Indiana on June 16, 1963, from Newport News, Virginia, and being in need of hospitalization on September 16, 1963, could not, under this statute, have acquired a residence for the purpose of poor relief in the State of Indiana and the same was so stipulated by the parties.

Mr. Smith was a farm laborer, owned no real estate and had a modest income for his labor with which to support himself, his wife and three minor children. He rented his home and had been hospitalized in at least two hospitals before he was admitted to the hospital of the appellee, Trustees of Indiana University.

Judge Pfaff, speaking for this court in *Parkview Hosp.* v. *County Dept. Pub. Welf.* (1963), 134 Ind. App. 689, 191 N. E. 2d 116, held that the terms "indigent person" and "poor person" are synonymous, and elaborated on a definition with

respect to the Poor Relief Act, Acts 1935, ch. 116, § 33, p. 432, § 52-176, Burns' 1964 Repl., as follows:

"[W]e do not understand the legislative intent to be that in order for a person to be an 'indigent person' within the meaning thereof there must be a complete lack of resources. Rather, we believe the legislative intent was to include those persons who did not have resources sufficient to pay for all the medical and hospital services required by the injury."

In *Washington Twp. of Allen County* v. *Parkview Memorial Hosp.* (1969), 144 Ind. App. 359, 246 N. E. 2d 391, 17 Ind. Dec. 186, the court said:

"The Legislature has provided a definition of the term, 'indigent person,' Acts 1965, ch. 172, § 1, p. 302, § 52-1146, Burns' 1968 Cum. Supp., which reads in pertinent part:

'For the purpose of this act the term "indigent person" shall mean a person without financial resources to pay for such medical or hospital care.'

"Applied to the situation at hand, the Hutchens were 'poor persons' within the purview of the statute at the time of Mr. Hutchens' visit to the home of the township trustee. The unfortunate fact is that Mr. Hutchens, like many Americans today, was making an honest effort, in good faith, to make ends meet. At the age of 59 he suddenly was left without a job and with no particular skill or trade to qualify him for further employment. At the same time, his wife became seriously ill with diabetes and complications. Still, Mr. Hutchens made every effort to preserve a financial balance. However, his financial liabilities far outweighed his income. * * *"

Considering the evidence most favorable to the appellant, Mr. Smith was a "poor person" or an "indigent person" by any subjective or objective test.

In answer to the query as to the time Mr. Smith "became ill" we have the stipulation, which is binding, that he became ill prior to September 16, 1963, but in no event prior to July 1, 1963, in West Point Township, White County. There was

a further stipulation that Mr. Smith was not a resident of Princeton Township when he became ill. We feel we cannot improve on the language of the trial court in the discussion of Smith's becoming ill and support our holding that he did become ill in West Point Township, White County, Indiana, which discussion we adopt as ours and which was heretofore set out in paragraph 4 of rhetorical paragraph 7 in the trial court's findings.

There was a "necessity" for treatment, as Smith had cancer from which he later succumbed.

We are of the further opinion that the notice from the appellee, Board of Trustees of Indiana University, to the trustee of West Point Township on the day following Mr. Smith's admission to the hospital and the immediate notice from the trustee of West Point Township to the appellant, The County Department of Public Welfare of White County, is sufficient notice to make The County Department of Public Welfare of White County liable under the statute. As is well stated by the trial court:

> "The primary act required is to give aid and care to the indigent and when such care has been rendered, then determine who is responsible for the payment of such care."

Society cannot tolerate, and the law does not contemplate, great suffering, agony and even death to a person, poor or otherwise, while some person or governmental agency determines who may be responsible for medical and hospital care for such person. Our General Assembly, acting in a humane manner, enacted this statute and intended that it be administered on a humane and not a technical basis. The trustee of West Point Township having received notice the day following Mr. Smith's admission and having promptly notified the appellant, met its requirements under the facts and the law and was relieved of responsibility to the appellant and such responsibility for the care and hospitalization of Mr.

Smith then became that of the appellant, The County Department of Public Welfare of White County, under Burns' Ind. Stat. § 52-148a.

There is no evidence in the record that The County Department of Public Welfare of White County, West Point Township, White County, and Princeton Township, White County, were officially notified by the Trustees of Indiana University of Mr. Smith's return for hospitalization on January 4, 1964. However, from the medical records introduced into evidence it is clear that Mr. Smith was being treated for the same illness as upon his first discharge from the hospital, in which he was told to return in two months. He did so return and was hospitalized from January 4, 1964, until January 18, 1964, and received treatment for cancer, which was a continuation of the original treatment, which had been terminated October 31, 1963, by Mr. Smith's discharge under medication with orders to return to the Hematology and Radiology Clinic in two months. This, in our opinion, was a continuation of the first hospitalization and for which no notice would be required or given to the trustee of West Point Township and, in turn, no notice would be required to be given by the trustee of West Point Township to the appellant.

Finding no error, the judgment of the court is hereby affirmed. The trial court having neglected to enter judgment for the appellees West Point Township, White County, Indiana, and Princeton Township, White County, Indiana, is now ordered to enter judgment in this cause for each of said defendants-appellees herein.

Costs versus appellant.

Carson, Cooper and Sullivan, JJ., concur.

NOTE.—Reported in 251 N. E. 2d 456.