STATE of Indiana, DEPARTMENT OF PUBLIC WELFARE, Appellant (Defendant Below),

v.

ST. JOSEPH'S HOSPITAL OF SOUTH BEND, INC., Appellee (Plaintiff Below).

No. 3–178A20.

Court of Appeals of Indiana, Fourth District.

Dec. 31, 1979.

Theo. L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellant.

Thomas F. Lewis, Jr. and Robert W. Mysliwiec, South Bend, for appellee.

**MILLER, Presiding Judge.**

This is an appeal from a judgment of the Superior Court of St. Joseph County, Indiana, setting aside a decision of the Appellant-Defendant, the Indiana State Department of Public Welfare (State Department), pursuant to Ind.Code 4–22–1–1 (1971), *et seq.,* the Indiana Administrative Adjudication Act. The State Department had decreed that St. Joseph's Hospital of South Bend, Indiana (St. Joseph's), not St. Joseph County Department of Public Welfare (County Welfare), should bear the $544.80 hospital expense of patient, Larry Beason.

We remand with instructions.

The facts pertinent to this appeal are as follows: Larry Beason was admitted to St. Joseph's on October 9, 1972 with a pelvic injury suffered when a car fell on him at Gateway Auto Sales where he was employed as an independent contractor. He was unconscious when admitted and St. Joseph's was unable to interview him concerning his financial situation. The next day a hospital representative conducted a financial interview and was informed by Beason that he had either hospitalization insurance or workmen's compensation through Gateway Auto Sales. On October 11th, St. Joseph's phoned Gateway to verify the insurance and was informed Beason was an independent contractor and not covered by hospitalization or workmen's compensation. In order to collect its expenses from County Welfare for an indigent patient, St. Joseph's immediately prepared and mailed a Department of Public Welfare Form 475 (DPW 475—Hospital or Physician Report of Illness or Injury) pursuant to Ind.Code 12–5–2–1 [1] to County Welfare timely notifying

---

1. Ind.Code 12–5–2–1. On and after the effective date [July 8, 1965] of this act, in the event any indigent person is injured or in the event any indigent person who is a nonresident of this state becomes ill in any county of this state, any hospital to which such indigent person is admitted for care or any physician furnishing medical services to such indigent person shall within seventy-two [72] hours, not counting holidays or weekends, report such matter to the department of public welfare of the county in which the person is injured or becomes ill. The department shall promptly complete an investigation to determine the legal residence, establish need and determine eligibility for the payment of the cost of medical or hospital care for such indigent person and shall promptly report its findings to the reporting hospital or physician.

The cost of any such medical or hospital care arising out of such illness or accident shall be borne by the county of the legal residence of the indigent person: Provided, That in situations where it is determined that the indigent person has no legal residence in any county of this state or where the legal residence of the indigent person is not determined, the cost of any such medical, hospital care and the cost of transportation to the place of treatment arising out of the illness or accident shall be borne by

it of Beason's indigency. The form indicated that no insurance benefits were available. A County Welfare caseworker interviewed Beason on October 13th or 14th and Beason again indicated that there was "liability insurance" and that he would pursue the matter. Beason was discharged from St. Joseph's on October 14, 1972. His bill amounted to $544.80.

On December 12, 1972, the hospital bill which had been mailed to Beason was returned to St. Joseph's marked "Moved, No Forwarding Address." St. Joseph's phoned County Welfare on December 13th, and talked to a caseworker who could not remember the case. County Welfare wrote Beason on January 17, 1973 asking him to contact it with regard to the bill. When Beason failed to respond, County Welfare denied reimbursement to St. Joseph's on May 24, 1973 apparently on the ground that Beason had not cooperated by making an application for assistance. St. Joseph's received the denial on June 6, 1973 and appealed the decision to the State Department pursuant to Ind.Code 12–5–2–2.[2] Following a full hearing before a Hearing Officer held on February 12, 1975, the denial of reimbursement was sustained in the Findings of Fact and Conclusions entered on February 9, 1976. An appeal was then taken to the State Department, which also sustained the denial of reimbursement. St. Joseph's appealed to the St. Joseph Superior Court under the judicial review sections of the Administrative Adjudication Act, Ind.Code 4–22–1–14 and 18. The State Department filed a Motion to Dismiss and Affirmative Defense alleging it was not an interested party in the action but only an administrative agency responsible for a part of the appeal process. The record does not reveal a ruling on the Motion to Dismiss. On April 19, 1977, the Superior Court found the State Department's decision to be unsupported by substantial evidence, contrary to law, arbitrary and capricious. The case was remanded with instructions for the State Department to order County Welfare to reimburse St. Joseph's for its expenses incurred on behalf of Beason. The State Department now appeals to this Court presenting the following issues for review:

1. Was the State Department a real party in interest in this cause?

2. Did the trial court err by finding that eligibility of a person for hospital care reimbursement is not predicated on a patient's application for such reimbursement from the county welfare department?

3. Did the trial court err by ordering the State Department to direct County Welfare to reimburse Saint Joseph's rather than remanding to the State Department for further proceedings?

the county in which the indigent person is injured or become[s] ill. The cost of the medical, hospital care and the cost of transportation to the place of treatment shall be paid out of any money appropriated to the county welfare department. For the purpose of this act the term "indigent person" shall mean a person without financial resources to pay for such medical or hospital care.

2. Ind.Code 12–5–2–2. If the county department of public welfare of the county in which the person is injured or becomes ill fails to make an investigation and determination within ninety [90] days after receiving the report or if it determines that the injured or ill person is not eligible for the payment of costs of medical or hospital care, or if the county responsible for the payment of the cost of the medical or hospital care of the injured or ill person fails or refuses to accept responsibility for the payment of such costs, the hospital or physician affected thereby may appeal the matter to the state department of public welfare. The state department shall thereupon fix a time and place for a hearing on the matter by the administrator of the state department of public welfare as hearing officer or by a person appointed by him as hearing officer. A notice of the hearing shall be served upon all parties or persons interested in the matter at least twenty [20] days before the time fixed for the hearing. The state department may make such additional investigation as may be deemed necessary for presentation at the hearing. The state department shall determine the eligibility of the injured or ill person for the payment of costs of medical or hospital care under the provisions of this act and, if found to be eligible, the responsible county and the reasonable costs of such care due the person or persons furnishing the care. Its decision shall be final: Provided, That a party or person aggrieved by such determination shall have the right of appeal from such decision in accordance with Acts 1947, ch. 365 [Administrative Adjudication Act] as amended. The state department of public welfare may adopt rules and regulations governing the procedure for carrying out the provisions of this act [12–5–2–1—12–5–2–5].

## ISSUE ONE

The State Department claims the provisions of Ind.Code 12–5–2–1 through 5 provide that reimbursement to a hospital be made from county resources and, therefore, the State Department acts only as a fact-finding tribunal and should not be a party to this action. We disagree. This same contention was made by the State Department in the recent case of *Indiana Department of Public Welfare v. Anderson*, (1976) Ind.App., 357 N.E.2d 267 which was an appeal from the State Department's finding that the applicant did not have a permanent disability and was not entitled to disability payments from the Marion County Department of Public Welfare. In determining whether the action was properly brought against the State Department, Judge Sullivan, speaking for the Court, concluded as follows:

> The State Department argues that since I.C. 12–1–7–36 directed that disability payments be made by the county department, the State Department is not the proper defendant. This argument ignores the explicit words of the statute which prescribes an appeal through the State Department:
>
> "The state department may make such additional investigations as it may deem necessary and shall make such decisions relative to the granting of assistance and the amount of assistance to be granted to the applicant as in its opinion is justified and in conformity with the provisions of this act [12–1–1–1—12–1–12–17]. *All decisions of the state department made in conformity with the terms of this act shall be binding upon the county department involved and shall be complied with by such county department, and shall have the same force and effect as decisions of the county department from which appeals are not taken.*" I.C. 12–1–7–41 (Burns Code Ed.1973). (Emphasis supplied).
>
> Since it is within the authority of the State Department to compel the county department to make payments, it was proper to name the State rather than the county department as the defendant in

the judicial review action. Moreover, Anderson is appealing the State Department's own independent determination that she is not disabled. Having exhausted her administrative remedies, she was seeking review of the "final order" of the Department. *Downing v. Bd. of Zoning Appeals of Whitely Co.* (1971) 149 Ind. App. 687, 274 N.E.2d 542. We find no error in Anderson's designation of defendants.

Since the language of the statute construed in *Indiana Department of Public Welfare v. Anderson, supra*, is substantially the same as that found in Ind.Code 12–5–2–2 (see footnote 2) we find Judge Sullivan's reasoning applicable to the case before us. In addition, this action was appealed to the Superior Court under the provisions of the Administrative Adjudication Act. This Act provides "[w]ritten notice of the filing of such verified petition for review and a copy of said petition shall be personally served upon the agency and the attorney-general." Ind.Code 4–22–1–14.

The State Department's claim that it is not a proper party to this action is without merit.

## ISSUE TWO

The State Department next contends that before County Welfare can be required to pay the hospital expenses of an indigent there must be a formal application made by the indigent (or presumably someone on his behalf) for such aid. It claims that such an application is essential to the investigation of the eligibility of the alleged indigent, asserting:

> Without such information the county welfare department is without its one important means of determining eligibility and preventing loss of funds through fraud by 'drifters' who have no ties to the county and who may, somewhere, have sufficient funds to finance their medical expenses, a not altogether uncommon occurrence.

But the State Department does not suggest that such a prerequisite to payment by County Welfare has its origin in our stat-

utes. Nor can we discover any such provision. Its argument in this regard would be better directed to our Legislature.

Further, in *Allen County Department of Public Welfare v. Ball Memorial Hospital Association* (1969), 253 Ind. 179, 252 N.E.2d 424, our Supreme Court held that the provision in Ind.Code 12–5–1–1 requiring a hospital to notify a county department of welfare within seventy-two [72] hours after the admission of an alleged indigent was merely directory, not mandatory, and required the hospital to act promptly, as soon as it had a reasonable opportunity to ascertain the possible indigency of its patient. The Court concluded at p. 428 of 252 N.E.2d:

We further hold that where the facts show notice was given promptly, as soon as the hospital had a reasonable opportunity to ascertain the facts under which notice should be given, *it has performed its responsibility under this statute*, and should not be defaulted or penalized, as suggested by Appellant in this case. We believe this best effectuates the legislative intent by eliminating the mischievous and harsh results that accompany other possible interpretations." (Emphasis added).

*See, County Department of Public Welfare of White County v. Trustees of Indiana University* (1969), 145 Ind.App. 392, 251 N.E.2d 456.

■ The provisions of Ind.Code 12–5–2–1 impose a duty upon a county welfare department to conduct an investigation after reasonable notice that an indigent person has been hospitalized. The investigation must determine the patient's legal residence, establish need and determine eligibility for payment of the hospital expense. If a dispute arises and the case progresses to the State Department, the law also permits such State Department to make an "additional investigation as may be deemed necessary for presentation at the hearing." Ind.Code 12–5–2–2. From our case law and the obvious legislative intent, we must conclude that it is the responsibility of the welfare authorities, not a receiving hospital, to conduct the investigation contemplated by Ind.Code 12–5–2–1. Further, a requirement that the patient himself must trigger

such investigation by applying for benefits is neither contemplated nor authorized by statute. If we were to sustain the State Department's position, we would certainly reach an absurd result. What of the indigent patient who is so disabled that he is unable to make application to the welfare authorities? What of the patient who remains in a comatose condition for a substantial length of time and then dies? Assuming these patients have no one to apply for benefits on their behalf, the State Department's interpretation would require the hospital to bear the entire burden of their treatment, a result we hold would frustrate the statute's purpose and cause it to be administered on a technical, rather than a practical and sensible basis.

■ The State Department's action in upholding County Welfare's refusal to conduct an investigation because of the lack of a formal application by the patient was arbitrary, capricious and contrary to law.

ISSUE THREE

■ Finally, the State Department contends the trial court erred in ordering it to direct County Welfare to reimburse St. Joseph's rather than remanding the case and permitting the State Department to take further action. We agree.

In *Indiana State Board of Registration and Education for Health Facility Administrators v. Cummings* (1979), Ind.App., 387 N.E.2d 491, this Court held:

The Board questions the trial court's action in ordering it to issue a license to Cummings citing the Administrative Adjudication Act, IC 4–22–1–18, and *Indiana State Teachers Retirement Board v. Smock* (1975), Ind.App., 332 N.E.2d 800. We agree.

Our courts have consistently held that under IC 4–22–1–18 the trial court may properly vacate an agency's findings as contrary to law but it exceeds its authority when it compels agency action as part of its initial review function. *Indiana Alcoholic Beverage Commission v. Lamb* (1971), 256 Ind. 65, 267 N.E.2d 161; *Aeronautics Commission of Indiana v. Radio*

*Indianapolis, Inc.* (1977), Ind.App., 361 N.E.2d 1221; *Indiana Alcoholic Beverage Commission v. Johnson* (1973), 158 Ind. App. 467, 303 N.E.2d 64; *Smock, supra.*

The trial court was correct in setting aside the decision of the State Department. However, it should have remanded the cause to that Department in order that a proper investigation be made to determine the eligibility of Beason with instructions that the burden is on the welfare authorities, not St. Joseph's, to conduct the investigation. And if said authorities again decline to investigate, then the State Department should direct County Welfare to pay the expenses here involved.

This cause is remanded to the trial court for action consistent with this opinion.

CHIPMAN and YOUNG, JJ., concur.