The BOARD OF SCHOOL COMMIS-
SIONERS OF the CITY OF INDI-
ANAPOLIS, Appellant,

v.

Harry EAKIN, Auditor of Marion County, County Board of Tax Adjustment of Marion County, Indiana, and State Board of Tax Commissioners of the State of Indiana, Appellees.

No. 882S312.

Supreme Court of Indiana.

Feb. 18, 1983.

Bamberger & Feibleman, John Wood, Ice, Miller, Donadio & Ryan, Alan H. Lobley, Barton T. Sprunger, Indianapolis, for appellant.

City-County Legal Div., John P. Ryan, Corp. Counsel by Mark Dall, Asst. Corp. Counsel, Indianapolis, Linley E. Pearson, Atty. Gen., Margarett L. Knight, Deputy Atty. Gen., Indianapolis, for appellees.

Richard J. Darko, Janet C. Knapp, Bayh, Tabbert & Capehart, Indianapolis, for amicus curiae The Indianapolis Educ. Assn.

PIVARNIK, Justice.

This appeal comes to us by way of an Emergency Petition to Transfer pursuant to Ind.R.App.P. 4(A)(10). Plaintiff-Appellant Board of School Commissioners of the City of Indianapolis (IPS) by said Petition requests us to review the Marion Superior Court's decision to dismiss their cause.

All of the evidence in this case was stipulated to by the involved parties. The stipulations indicate that IPS adopted its 1982 budget and corresponding tax rates and levies on August 27, 1981. As one component of its 1982 tax package, IPS adopted an excessive tax levy of $53,724,000. The 1982 maximum normal tax levy for IPS was $51,007,083. The Marion County Board of Tax Adjustment (County Board) reduced

said excessive levy by $7,055,650 to $46,668,-350. By doing so, the County Board reduced IPS' 1982 general fund levy $4,388,-733 below IPS' 1982 maximum normal tax levy. This reduction apparently was in contravention of Ind.Code § 6–1.1–19–2(b) (Burns 1978) which dictates that the County Board "shall reduce the excessive tax levy to the maximum normal tax levy." The Marion County Auditor (Auditor), as secretary of the County Board, gave IPS notice of the County Board's decision by letter dated November 3, 1981. The text of the letter was as follows:

"For your information, a copy of a sheet showing the action of the Marion County Tax Adjustment Board relative to your budget is enclosed.

The tax rates as set by the Marion County Tax Adjustment Board should be published on November 4th in the Indianapolis News and the Indianapolis Commercial. *Should you wish to appeal the action of the Marion County Tax Adjustment Board, you will have ten days from the published date to make this appeal.* Also enclosed is a schedule for the budget hearings by the State Board of Tax Commissioners to set final rates and budgets for 1982.

\* \* \* \* \* \*

If we can be of any service to you during the next few months, please let us know." (emphasis added).

The State Board of Tax Commissioners (State Board) certified IPS' 1982 general fund levy in the amount of $47,795,721. The State Board so acted by exercising what authority it perceived itself to have pursuant to Ind.Code § 6–1.1–19–4(f) (Burns Supp.1982). This final figure is $3,211,362 below IPS' maximum normal tax levy. As Appellant IPS stated in its reply brief:

"IPS did not appeal to the State Board for relief from the maximum normal tax levy limitation in IC 6–1.1–19. By virtue of its failure, IPS lost its right to seek $2,716,917 of property tax revenues ($53,-724,000, the amount originally adopted by IPS, less $51,007,083, its "normal tax

levy"). Such amount is not now, nor has it ever been, in issue in this case."

What Appellant apparently now seeks by this action is the opportunity to claim an additional 1982 general fund tax levy of $3,211,362. This amount represents the difference between the 1982 general fund levy certified by the State Board and IPS' 1982 normal tax levy. Regardless of the fact that IPS may have been entitled to receive from the County Board its normal tax levy, the merit of whatever claim IPS may make to this amount is not presently before this Court. This appeal has been taken from the trial court's decision to dismiss Appellant's cause and must be limited accordingly despite whatever unhappy consequences such limitation may bode.

The judgment of the trial court from which Appellant now appeals is as follows:

"And the Court, having considered the Stipulation of Facts, oral arguments, and Trial Briefs filed by each of the parties and by the Indianapolis Education Association appearing as Amicus Curiae, now makes the following Conclusions of Law and Judgment Order:

1. The failure of the Plaintiff to file an appeal of the actions of the Defendant County Board of Tax Adjustment to the Defendant State Board of Tax Commissioners pursuant to Ind.Code 6–1.1–17–15, and the failure of the Plaintiff to file an appeal to the Defendant State Board requesting emergency financial relief pursuant to Ind.Code 6–1.1–19–2(d), *constituted a failure to exhaust the Plaintiff's administrative remedies, and deprives this Court of jurisdiction to review* both the actions of the Defendant County Board, and any actions of the Defendant State Board which may have ratified or been based upon the actions of the Defendant County Board.

2. Further, the failure of the Plaintiff to file either appeal to the Defendant State Board *deprived the State Board of authority to hear the Plaintiff's appeal in the manner provided by Ind.Code 6–1.1–17–16,* and the final review which the State Board made of the County Board's

actions, and the budgets, tax rates and tax levies as finally determined by the State Board were consistent with the requirements of law.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Judgment should be and is hereby entered in favor of the Defendants and against the Plaintiff, that Plaintiff takes nothing by way of his Complaint and that Plaintiff is ordered to pay the costs of this action." (emphasis added).

Based on our understanding of the trial court's judgment, the record and each of the briefs, we believe the issues now to be decided are as follows:

1. Whether IPS effectively waived its statutory right to a State Board appeal thereby failing to exhaust its administrative remedies and depriving the trial court of certain review jurisdiction; and

2. Whether the State Board properly reviewed IPS' 1982 tax package.

I.

As a public school corporation, IPS was entitled to challenge the County Board's alleged erroneous action by initiating either of two different appeal procedures. By virtue of Ind.Code §§ 6–1.1–19–2(d) and 6–1.1–17–15 (Burns 1978), IPS could have initiated a direct appeal to the State Board by properly filing a Petition for Appeal. In addition, Ind.Code § 6–1.1–19–2(d) provided IPS with a means of extraordinary relief by way of a Petition for Appeal for Emergency Financial Relief. For reasons beyond our perception, IPS did not utilize either of these two statutory provisions for appeal. Although IPS formally resolved on October 27, 1981, to appeal to the State Board in compliance with Ind.Code § 6–1.1–17–15, no timely appeal was ever filed. To have been timely, IPS must have filed its Petition for Appeal within ten days of the date due notice was published. That date apparently was November 4, 1981. IPS also did not file a Petition for Emergency Financial Relief within the twenty day limitation period commencing on the notice publication date.

IPS did attempt to tender to the State Board a document styled as a Petition for Appeal and Request for Emergency Financial Relief. This attempt occurred on December 8, 1981, during the State Board's scheduled "budget hearing" on IPS' 1982 tax package. At that time, the State Board's hearing officer refused to accept or to consider IPS' document or any other argument by which IPS sought to obtain an appellate review and revision of the County Board's action. The hearing officer so proceeded on the basis that IPS had failed to make a timely appeal.

 Appellant now suggests that the State Board misled it into believing that Appellant would be allowed a State Board appeal without having to formally file for one before the appropriate statutory deadline. The only evidence in the record of any communication from the State Board to IPS is the "LEGAL NOTICE" attached to the Auditor's letter of November 3, 1981. Said notice specifically informed IPS that its budget and the budgets of forty-six other Marion County municipalities would be considered at a public hearing to be conducted by the State Board during five sessions between December 7th and 9th, 1981. The notice also indicated that during the afternoon session on December 8th, IPS' 1982 tax package would be considered along with seven other tax packages. Further, the notice stated:

"*Any appeal filed* by taxpayers with the State Board of Tax Commissioners from the action of the County Board of Tax Adjustment or an appropriating body, or *any appeal filed* by the proper officers of any municipal corporation from the action of the County Board of Tax Adjustment or *any appeal filed* pursuant to 6–1.1–19–2 and 6–3.5–1–12(c), *will also be considered at said time in conjunction with the hearing on the budgets, levies and rates* of the municipality on which such appeal was filed." (emphasis added).

We do not believe that the State Board's notice suggests in any way that the State

Board would entertain any appeal not *filed* in a timely manner according to the applicable statutes. Accordingly, we find that the State Board did not mislead IPS into being deprived of an appeal. We also find that IPS was properly notified by the Auditor's November 3rd letter of its need to timely file any appeal it wished to pursue.

■ By not filing for an appeal in a timely fashion, IPS waived its statutory right to a State Board appeal of the County Board's action. The State Board was therefore correct in refusing to accept and consider the Petition IPS attempted to tender on December 8th. Since IPS effectively waived its right to an administrative appeal, we hold that IPS failed to exhaust its administrative remedies. In Indiana, the general rule is that no one is entitled to judicial relief for an alleged or threatened injury until the prescribed administrative remedy has been exhausted. *Wilson v. Review Bd. of the Ind. Employment Security Div.,* (1979) 270 Ind. 302, 305, 385 N.E.2d 438, 441, *cert. denied,* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101. Accordingly, we hold that IPS' failure to timely file a State Board appeal deprived the trial court of jurisdiction to review "any actions of the . . . State Board which may have ratified or been based upon" the previously uncontested County Board action. We cannot hold otherwise because to do so would constitute an infringement upon the lawful authority of the State Board and the legislative discretion of the General Assembly.

### II.

■ The County Board was required to act on IPS' 1982 tax package by virtue of Ind.Code §§ 6–1.1–17–6, 6–1.1–19–2(a) and 6–1.1–19–2(b) (Burns 1978). Moreover, the County Board's action made said package "final" if not subject to State Board review pursuant to the provisions of Ind.Code § 6–1.1–17–11 (Burns 1978). Ind.Code 6–1.1–17–11(2) renders County Board action automatically subject to State Board review whenever Ind.Code § 6–1.1–17–10 (Burns 1978) applies. Ind.Code § 6–1.1–17–10 applies whenever a political subdivision's aggregate tax rate exceeds the maximum aggregate tax rate dictated in Ind.Code § 6–1.1–18–3(a) (Burns 1978). In the instant case, the parties stipulated that the County Board approved for IPS a 1982 general fund tax rate of $3.15326 on each $100 of assessed valuation in the School City of Indianapolis. This amount clearly exceeded the limitations provided in Ind.Code § 6–1.1–18–3(a). Under such facts, the State Board had a duty according to Ind.Code §§ 6–1.1–17–11(2) and 6–1.1–17–10 to administratively review the County Board's action on IPS' 1982 tax package. The parties also stipulated that the Auditor certified the IPS package to the State Board and that the State Board reviewed the same. The trial court acknowledged such review holding that the State Board's review was proper and "consistent with the requirements of law."

■ The Legislature has duly delegated to the State Board the authority to "revise, reduce, or increase" certain tax packages which the State Board is required to review. Ind.Code §§ 6–1.1–17–16(a) and 6–1.1–17–16(b) (Burns 1978). That is not to say that the manner in which the State Board may exercise this authority must be the same in every review. This Court previously has stated:

"We acknowledge that the proceedings before administrative bodies are not required to be conducted with all of the procedural safeguards afforded by judicial proceedings, even when such proceedings are judicial in nature. We accept a lower standard in proceedings before quasi-judicial bodies because it would be unworkable to do otherwise. There are, nevertheless, standards below which we should not go. *These standards, logically, should be at the highest level that is workable under the circumstances.* "The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie v. Connecticut* (1971), 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113."

*City of Mishawaka v. Stewart,* (1974) 261 Ind. 670, 676, 310 N.E.2d 65, 68 (emphasis added). We recognize that the State Board's effort to fulfill its statutory duty to review a large number of tax packages according to strict statutory deadlines would be severely hindered if the State Board were required to conduct full-scale, quasi-judicial proceedings in conjunction with each and every review it must make. In fact, a holding to that effect would render the Legislature's property tax disbursement scheme unworkable. Moreover, to so hold would presume that the Legislature intended a tax disbursement system wherein review after review is conducted on the same issues time after time. We do not think that the Legislature ever intended such a review system which is both resource wasteful and contrary to the legislative intent that all budgetary problems be expeditiously resolved. Accordingly, we hold that State Board review can take either of two forms. The State Board can administratively review a county board's action in a manner akin to that by which administrative bodies exercise their delegated rule-making authority. The State Board also can posture itself as an appellate tribunal and review a county board's action by way of an adjudication. Either way, the State Board must always hold a properly noticed "public hearing" before it can review and act upon any tax package. Ind.Code § 6-1.1-17-16(c) (Burns 1978). The hearing required to precede the State Board's administrative review of a tax package, however, does not have to be of the same character as the hearing that must be accorded an appeal wherein the State Board's action becomes quasi-judicial in nature.

▬ Although Ind.Code §§ 6-1.1-17-16(a) and 6-1.1-17-16(b) neither make nor implicate any specific statutory definition for "hearing", we now hold that the General Assembly's property tax disbursement scheme provides for two distinct types of State Board hearings. When no appeal has been timely filed, the State Board need hear only information which will assist the Board in fulfilling its duty to conduct an administrative review. Such a hearing in this narrow context satisfies the necessary due process requirements. After all, an appeal was available to any party deeming itself aggrieved and in need of quasi-judicial relief. Furthermore, tax spending does not entail the same fundamental constitutional rights involved in tax collection and a political entity's constitutional rights are rightfully less than those of an individual. A State Board review hearing on a case not appealed, therefore, need only provide a formal opportunity for all interested people to bring to the attention of the State Board any information which will assist the State Board in fulfilling its administrative duty. Of course, the State Board may reasonably exercise its discretion to determine what information will be of assistance to the Board and what information may rightfully be ignored or rejected as irrelevant or extraneous. When the State Board conducts a review with respect to an appeal, however, the State Board is proceeding in a quasi-judicial fashion and must give greater consideration and closer scrutiny to the specifics of the appellant's case. In such cases, the hearing must afford all parties the right both to submit evidence and to cross-examine witnesses. Ind.Code § 4-22-1-8 (Burns 1982). Further, written findings must be made and any judgment rendered must be according to said findings. Ind.Code § 4-22-1-10 (Burns 1982).

Our above stated holdings on the Legislature's property tax disbursement scheme are further substantiated by the legislative intent implicit in the special statutory treatment provided by the Legislature for public school corporations. Although the State Board possesses the general authority to "revise, reduce, or increase" any tax package it reviews, the State Board must exercise said authority subject to the limitations of Ind.Code § 6-1.1-19 when it reviews pursuant to an appeal filed by a public school corporation. Ind.Code § 6-1.-1-19-3 (Burns 1978) specifically dictates that the State Board may not exercise any power defined in Ind.Code § 6-1.1-17 "until it receives, in respect to the appellant school corporation's budget, tax levy, or tax

rate, the recommendation of the tax control board." The sole purpose of the tax control board is to assist the State Board "in deciding the merits of any appeal" filed by a public school corporation. Ind.Code § 6–1.-1–19–4(a) (Burns Supp.1982). In stark contrast, the Legislature has not enacted any special provision to control or otherwise affect the State Board's administrative or non-appellate review of a public school corporation's tax package. Clearly, this disparity in the Legislature's statutory system of review stems from the legislative intent that special treatment will be accorded the review of a public school corporation's tax package only when a public school corporation deems itself aggrieved enough to seek quasi-judicial relief through the timely filing of a State Board appeal. The protection which the tax control board can afford a public school corporation is neither provided for nor warranted when a public school corporation does not specifically request such protection through the formal filing of a State Board appeal. Likewise, the State Board need not conduct its statutory review as a full-scale, quasi-judicial proceeding unless it is properly requested to do so.

 The critical fact in the instant case is that IPS did not timely file for a State Board appeal. By not doing so, IPS waived its statutory right to a State Board appellate review of its 1982 tax package. Moreover, IPS waived its statutory right to challenge the County Board's action on its 1982 tax package. This specifically means that IPS lost its only opportunity to adjudicate its claim to a maximum normal tax levy. That is not to say, however, that IPS lost an additional 1982 general fund tax levy of $3,211,362. After all, the State Board had no statutory duty to grant IPS its maximum normal tax levy regardless of whether IPS' claim was adjudicated or not. Since no appeals were timely filed, the State Board's only statutory duty was to administratively review IPS' tax package along with each of the other Marion County Tax packages which collectively called for an excessive aggregate tax rate. In no way did the State Board owe any special duty to IPS. What the State Board correctly solicited from IPS was information which would assist the State Board at its December 8th hearing in making its final administrative determinations. Specifically, the State Board's above noted "LEGAL NOTICE" informed IPS as follows:

> "At such hearing, officials and taxpayers will be permitted to present any evidence that may give information on items in the budgets that, in their opinion, should be changed or reduced, or any other *information that will assist this Board in finally determining the budget, levies and rates* of the above named municipalities. Said evidence or information may be presented by oral statement or by written document." (emphasis added).

What the State Board received from IPS during said hearing was IPS' belated Petition for Appeal and "arguments sought to be advanced for review and revision of the action of the County Board" (Stipulations of Fact, Number 12). We have already held that the State Board correctly refused to accept and consider the Petition IPS attempted to tender on December 8th. We now hold that the hearing and administrative review which the State Board conducted on IPS' 1982 tax package were proper as both were in all ways consistent with the holdings of this opinion.

The Indiana Administrative Adjudication Act provides "any party or person aggrieved by any order or determination made by any [State] agency shall be entitled to judicial review thereof". Ind.Code § 4–22–1–14 (Burns 1982). Such review is necessary to meet the due process requirements of our Indiana Constitution. *Warren v. Indiana Telephone Co.,* (1940) 217 Ind. 93, 26 N.E.2d 399. Under Indiana's Administrative Adjudication Act and according to our common law, a reviewing court's scope of review is limited generally to considerations of whether an agency's determination is capricious, arbitrary or in excess of the agency's statutory authority. We have held specifically:

> "A court may interfere with the action of a taxing body only if the action was procured by fraudulent, corrupt or illegal

means, was in bad faith, was arbitrary, capricious or a clear abuse of discretion, or was so manifestly wrong and prejudicial as to create the firm conviction that it resulted from a palpable disregard of official duty."

*State ex rel. State Bd. of Tax Commissioners v. Marion Superior Court,* (1979) Ind., 392 N.E.2d 1161, 1166; *see also: Indiana Alcoholic Beverage Commission v. Lamb,* (1971) 256 Ind. 65, 267 N.E.2d 161; *Dept. of Financial Institutions v. State Bank of Lizton,* (1969) 253 Ind. 172, 252 N.E.2d 248. Finding the trial court to have properly determined that the State Board acted correctly and within its statutory authority, we now affirm the trial court.

The trial court is in all things affirmed.

GIVAN, C.J., and HUNTER and PRENTICE, JJ., concur.

DeBRULER, J., not participating.